IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| NASIRUDDIN H., § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF THE SOCIAL § <br> SECURITY ADMINISTRATION, § <br> Defendant. § | No. 2:24-CV-142-BW |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Nasiruddin H. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act and his application for Social Security Income ("SSI") under Title XVI of the Act. (*See* Dkt. No. 1.) The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff filed a brief on appeal (Dkt. No. 11 ("Pl. Br.")), to which the Commissioner filed a brief in response (Dkt. No. 13 ("Def. Br.")), and Plaintiff filed a reply (Dkt. No. 14 ("Reply")). After considering the pleadings, briefs, and administrative record, the Commissioner's decision is **AFFIRMED**.

### **I. BACKGROUND**

On December 9, 2020, Plaintiff filed a claim for DIB and SSI, alleging disability beginning on December 3, 2020. (*See* Dkt. No. 9) (Transcript ("Tr.") 25.) Plaintiff alleges a disability due to a heart attack. (*See* Tr. 38-44, 66, 79, 93, 99, 107,

113, 216-20, 231). The claims were initially denied on August 10, 2021, and again upon reconsideration on August 1, 2022, after which Plaintiff timely requested an administrative hearing. (Tr. 25.)

On August 24, 2023, Administrative Law Judge Daniel Curran ("the ALJ") held a hearing, at which Plaintiff appeared and testified. (Tr. 47-62.) Plaintiff was represented at the hearing by Lauren Zwirlein, an attorney. (Tr. 47-62.) Tammie Alfaro, an impartial vocational expert ("VE"), appeared and testified telephonically. (*Id.*) The ALJ issued an unfavorable decision on November 9, 2023, finding Plaintiff not disabled. (Tr. 25-32.) On May 8, 2024, the Appeals Council denied Plaintiff's request for further review. (Tr. 1.) The ALJ's November 9, 2023, decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## II.  LEGAL STANDARDS

### A.  District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. To determine whether substantial evidence of disability

exists, four elements of proof must be weighted: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). "Procedural

errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id*. (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

### B. The Sequential Evaluation Process

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id*. § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)). On the first four steps of the analysis, the claimant has the initial burden of proving that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id*. "A finding that a claimant is disabled or is not disabled at

any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or

she is not disabled. *Id.* If an individual's impairment precludes him or her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 9, 2023 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since December 3, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: essential hypertension, diabetes mellitus, heart disease, and sleep apnea (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; he can walk or stand six hours of an eight-hour workday; and sit for six hours of an eight-hour workday. The claimant should avoid ladders, ropes, or scaffolds. Claimant can perform the other postural activity at the occasional level. The claimant can have occasional exposure to heat extremes, but must avoid working at unprotected heights, and never with moving mechanical parts.

6.  The claimant is capable of performing past relevant work as a Jailer (DOT 372.367- 014/SVP-4/as performed at Medium, but generally performed at Light). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 27-32.)

## IV.  ANALYSIS

Plaintiff asserts two points of error.  First, Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ did not base the RFC on a medical opinion, (Pl. Br. at 5), and second, that the ALJ's finding that Plaintiff could perform his past work experience as a jailer as generally performed is not supported by substantial evidence, (*id.* at 10).

### A.  Substantial evidence supports the ALJ's RFC finding.

"An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).  In doing so, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Id.*  Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017)).

Here, Plaintiff filed his claims on December 9, 2020, and therefore, the 2017 regulations are applicable to her claims.

Under these revised regulations, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 416.920c. To determine the persuasiveness of each medical opinion, the ALJ considers supportability, consistency, relationship with the plaintiff, specialization, and other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When considering medical opinions, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted).

The ALJ must also explain the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). An ALJ will discuss how he considered the supportability and consistency factors for a medical source's medical opinions in his determination or decision. *Id.* "At a minimum, the ALJ's discussion [of these factors] must give enough reasons to permit meaningful judicial review." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citations omitted). The ALJ may, but is not required to, explain how he considered the remaining factors. *Id.* When a medical source provides multiple

medical opinions, the ALJ will articulate how he "considered the medical opinions . . . from that medical source together in a single analysis using the factors," but he is not required to articulate how he considered each medical opinion from one medical source individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

"[F]undamentally, the ALJ cannot reject a medical opinion without an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 759–60 (5th Cir. 2017) (citation and internal quotations omitted); *accord Winston*, 755 F. App'x at 398. In explaining a rejection of a physician's opinion, the ALJ does not have "to state the weight given to each symptom and diagnosis in the administrative record." *Michelle K. M. v. Berryhill*, No. 3:17-CV-3044-BH, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019). An "ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it" when "the ALJ's decision states explicitly that he considered the entire record in his decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). There is no "statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings." *Id.* at 851; *Wendy M. B. v. Kijakazi*, No. 3:20-CV-02957-BT, 2022 WL 2704038, at *3-4 (N.D. Tex. July 11, 2022).

Substantial evidence is "more than a mere scintilla," and refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "ALJs can draw their own conclusions based on accurate medical information." *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018). An ALJ may properly formulate an RFC that is not an

adoption of any medical opinion while still basing his decision on substantial evidence. *See Webster*, 19 F.4th at 719 (concluding that although "the ALJ neither adopted the state agency report verbatim nor accepted the testimony of [a medical provider], it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards").

      Here, the ALJ summarized Plaintiff's medical history, as well as his hearing testimony. (Tr. 29-31.) Notably, the ALJ made sure to note the multiple severe impairments noted in Plaintiff's past medical history. (Tr. 29.) Among the summarized doctors' visits, the ALJ mentioned a May 2021 consultative examination, including the physical examination. (*Id.*) The ALJ noted that the examination revealed that Plaintiff "had a normal gait. He was able to perform heel and toe walking, tandem, and hopping[,] [but] [h]e was limited in his ability to perform squatting." (*Id.*) On July 2, 2021, Plaintiff underwent an off-pump double coronary artery bypass graft ("CABG"). (Tr. 30.) The ALJ took this into consideration and explained how the objective medical evidence of record showed that Plaintiff's recovery and aftercare "have proven uncomplicated." (Tr. 31.) Further, the ALJ noted how "[Plaintiff] has not been functionally limited by his specialists[,] and he has been advised regarding diet and physical activity." (*Id.*) Finally, he noted that although Plaintiff testified to debilitating symptoms and functional limitations, such limitations were not supported by the overall record. (*Id.*) For example, the ALJ mentioned that Plaintiff has not evidenced problems with his extremities or his back. (*Id.*)

The ALJ further stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. [He] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (Tr. 29.) The ALJ noted that "[t]he medical opinions and prior administrative medical findings were fully considered" (Tr. 31) but ultimately found the opinion evidence generally unpersuasive (*id.*). Specifically, the ALJ found that the opinions of the State agency medical consultants were "not consistent with or supported by the overall record of evidence." (*Id.*) Similarly, the ALJ found the report of the consultative examiner not generally persuasive because "the consultative examiner fail[ed] to explain how his findings relate to his limited functional statement." (*Id.*)

Plaintiff asserts that "[t]he ALJ relied on his own lay interpretation of the raw medical data to assess how [Plaintiff's] severe hypertension, diabetes mellitus, heart disease, and sleep apnea affected his ability to work[.]" (Pl. Br. at 7.) Plaintiff further alleges that because the ALJ did not accept the opinions of the state agency, he "was left alone to determine the impact of [Plaintiff's] impairments on his ability to perform work." (*Id.* at 8.) The Court disagrees.

As noted previously, the RFC is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *Taylor*, 706 F.3d at 602–03 (ALJ has the "sole responsibility" to assess the RFC, and the ALJ is not

required to adopt a specific physician's assessment). Despite Plaintiff's suggestion, however, the ALJ is not required to adopt a specific physician's assessment. *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (unpublished); *see also Webster*, 19 F.4th at 719. Further, as previously explained, it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Miller*, 2023 WL 234773, at *4 (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)).

Plaintiff argues that because the ALJ rejected all the medical opinions, the ALJ lacked substantial evidence to formulate Plaintiff's RFC, and therefore, relied on his own lay interpretation of the raw medical data to assess how Plaintiff's impairments affected his ability to work. (Pl. Br. at 7.) This is incorrect. The ALJ is not required to adopt a specific physician's assessment. *See Miller*, 2023 WL 234773, at *4; *see also Webster*, 19 F.4th at 719 (affirming an ALJ's RFC that neither "adopted the state agency report verbatim nor accepted the testimony of [a treating physician]," but was nevertheless "based on substantial evidence"). Here, the ALJ based his RFC finding on the credible evidence of record, including the objective medical evidence. (Tr. 29-31.) As noted above, the ALJ took into account Plaintiff's physical examinations, overall medical history, surgeries, recovery, among other factors, in determination of the RFC. Thus, "[t]he ALJ did not improperly draw medical opinions from raw data but properly examined the extensive medical documentation." *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. June 14, 2023) (unpublished). As the Fifth Circuit confirmed in *Ripley*, 67 F.3d at

557, even in the absence of a medical opinion—which is not the case here—the salient issue is always whether the ALJ's decision "is supported by substantial evidence in the existing record." *Id.*

Based on his review of the evidence, the ALJ's physical RFC finding included more restrictions than those imposed by the State agency medical consultants who reviewed Plaintiff's records (Tr. 71-73, 84-86, 109-10, 115-16). *See Wills*, 2023 WL 4015174, at *3 (noting that the ALJ imposed *more restrictive* limitations than those previously suggested by the state agency medical consultants) (emphasis in original); *see also Nikela H. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-939-N-BK, 2023 WL 6299967, at *4 (N.D. Tex. Sept. 8, 2023), *adopted*, 2023 WL 6300568 (N.D. Tex. Sept. 27, 2023) (finding ALJ did not err by including additional limitations beyond those assessed by State agency medical consultants).

Ultimately, Plaintiff's arguments amount to an invitation for the court to reweigh the evidence, which is not proper under the substantial evidence standard of review. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (providing that a reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination). Plaintiff may have preferred a different outcome on his claims, but the ALJ's findings are subject to judicial review only to check for compliance with law and the support of substantial evidence (more than a mere scintilla but less than a preponderance). *See Biestek*, 139 S. Ct. at 1154. The law demands that the ALJ carefully review the record, delineate his findings with attention to the full record, and point to

substantial evidentiary support for his findings. That is what the ALJ did here. Accordingly, Plaintiff's first point of error is overruled.

**B.     Substantial evidence supports the ALJ's step-four finding that Plaintiff could perform his past relevant work as a jailer as generally performed.**

In his second point of alleged error, Plaintiff asserts that "the ALJ erred in relying on the VE's testimony that the jailer occupation was currently performed at the light level." (Pl. Br. at 12.) The ALJ found that Plaintiff was not disabled at step four of the sequential evaluation process because he retained the RFC to perform his past relevant work as a jailer as that position is generally performed. (Tr. 31-32.) At step four in the sequential evaluation process, Plaintiff bears the burden of demonstrating that he is unable to perform his past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).

Plaintiff "concedes that the VE's classification of the jailer position as generally performed as light work is consistent with the DOT[.]" (Pl. Br. at 11.) But Plaintiff argues that the VE "should have classified this occupation at an exertional level greater than light per the regulatory DOT definitions." (*Id.*) Plaintiff grounds his argument on the fact that a jailer may need to restrain an inmate, and thus must exert more than 20 pounds of force. (*Id.*) According to Plaintiff, the "[t]he VE admitted that a jailer would need to at least occasionally restrain an inmate and may have to do this up to two to three times a day." (*Id.*) But Plaintiff misstates the VE's hearing testimony.

First, the DOT classifies "jailer" as generally performed as light work. (Dkt. No. 11-1.) "The regulatory definitions of exertional levels are controlling[,]" Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (Dec. 4, 2000), which Plaintiff concedes (Pl. Br. at 10 ("The DOT's and the Agency's exertional level definitions control.")). Therefore, even if the VE had given conflicting testimony—which, as detailed below, the Court finds he did not—the regulations would still control. Furthermore, the VE's testimony is not inconsistent with the DOT.

The regulations define light work as work that involves "lifting no more than 20 pounds at a time[.]" 20 C.F.R. §§ 404.1567(b), 416.967(b). "Occasionally" is defined as "an activity or condition [that] exists up to one-third of the time." POMS DI 25001.001(A)(34). Plaintiff asserts that because "[t]he VE admitted that a jailer would need to at least occasionally restrain an inmate and may have to do this up to two to three times a day" a finding of "light work" is inconsistent. (Pl. Br. at 11 (citing Tr. at 58-59).) Contrary to Plaintiff's assertion, however, the VE did not state that a jailer would need to occasionally restrain inmates. (*See* Tr. 58-59.) The VE recognized that a jailer would need to have the ability to restrain an inmate but clarified that "[i]t's not often that it comes up" (*id.* at 58), "it's not an essential function [of the job]" (*id.* at 59), and that "a jailer could go weeks or even . . . a month, and not have to restrain anybody" (*id.*). Similarly, Plaintiff's assertion that a jailer "may have to do this up to two to three times a day" (Pl. Br. at 11), is not

-15-

supported by the VE testimony that this is not an unusual occurrence. "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). Therefore, the VE's testimony regarding the exertional level of Plaintiff's past relevant work (Tr. 59) was not incorrect, and the ALJ properly relied on the VE's testimony to support his step-four finding (Tr. 31-32, 54-59). Based on the DOT classification and the VE testimony, the Court finds that the ALJ did not err in finding that the Plaintiff could perform past work as a jailer.

Plaintiff also contends that if he had been found unable to perform his past relevant work, the ALJ would have found him disabled pursuant to the Medical-Vocational Guidelines (the "Grids"). (*See* Pl. Br. at 12.) As explained above, however, substantial evidence supports the ALJ's determination that Plaintiff could perform his past relevant work as a jailer as that job was generally performed in the economy, and therefore, the ALJ properly determined that Plaintiff was not disabled at step four without moving on to step five. (Tr. 31-32.) *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Thus, the ALJ was not required to consider whether Plaintiff was disabled under the Grid rules, and therefore no error occurred. *See Wren*, 925 F.2d at 129. Because Plaintiff failed to meet his burden of proving an

inability to perform his past relevant work, Plaintiff's second point of error should be overruled.

### C. Plaintiff's new argument presented for the first time in reply is not properly before the Court.

In his Reply, Plaintiff alleges a new point of error based on a CT scan of his cervical spine performed in April 2022 (Tr. 1992), after the State agency consultants reviewed the record and after Plaintiff's consultative examination. (*See* Reply at 1-3.) Plaintiff alleges that "[t]he ALJ erred because he did not obtain a medical opinion on how [Plaintiff's] cervical impairment affected his ability to work." (Reply at 2.) Upon careful review of the administrative record, however, the Court finds no indication that Plaintiff alleged that a "cervical impairment" is something that caused his disability. (Tr. 28 (finding essential hypertension, diabetes mellitus, heart disease, and sleep apnea as severe impairments).)

Nor did Plaintiff raise this issue in his original briefing. The Fifth Circuit has repeatedly held that an argument not raised in the original briefing is not properly before the court. *See Butler v. Soc. Sec. Admin.*, 146 F. App'x 752, 753 (5th Cir. 2005) (In evaluating whether to consider an argument raised for the first time in a reply brief, the court held that "this court does not consider issues raised for the first time in a reply brief."); *Madrid v. Colvin*, No. 4:12-CV-800-Y, 2013 WL 6641305, at *6 (N.D. Tex. Dec. 17, 2013) ("The Court, however, will not consider issues raised for the first time in [plaintiff's] reply brief."); *see also Dotson v. Colvin*, No. 3:16-00997, 2017 WL 1164596, at *8 (M.D. Tenn. Mar. 29, 2017) ("an issue presented for the

-17-

first time in a reply to a response is waived"), *adopted*, 2017 WL 4005113 (M.D. Tenn. Sept. 12, 2017). Accordingly, this new argument presented by Plaintiff in his Reply brief is not properly before the Court for consideration.

### V. CONCLUSION

For the reasons discussed above, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on August 26, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE